## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LOIS CRAIG, | : | |
|     Plaintiff, | : | CIVIL CASE NO. |
| | : | 3:16-CV-2100 (JCH) |
|     v. | : | |
| | : | |
| STATE OF CONNECTICUT | : | |
| DEPARTMENT OF MENTAL HEALTH | : | NOVEMBER 28, 2017 |
| AND ADDICTION SERVICES, ET AL., | : | |
|     Defendants. | : | |

### RULING RE: MOTION TO DISMISS (DOC. NO. 49)

## I.  INTRODUCTION

Plaintiff Lois Craig ("Craig") brings this action against the Connecticut

Department of Mental Health and Addiction Services ("DMHAS") and Celeste Cremin-

Endes, Rachel Manemeit, Melody Davis, Abby Cramer, Tommy Wilson, Debby Baker,

and Stephanie Leonard Harris in their individual and official capacities on the basis of

claims arising out of Craig's employment relationship with DMHAS.  Second Amended

Complaint ("2nd Am. Compl.") (Doc. No. 45).  In her five-count Second Amended

Complaint, Craig alleges violations of her rights under sections 1981 and 1983 of title 42

of the United States Code (Count One); negligent infliction of emotional distress

("NIED") (Count Two) and defamation (Count Three) under state common law;

violations of the Americans with Disabilities Act ("ADA") (Count Four); and violations of

her rights under sections 1985 and 1986 of title 42 of the United States Code (Count

Five).  Id.

The defendants bring this Motion to Dismiss (Doc. No. 49) under Federal Rules

of Procedure 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6), asserting that the Second

Amended Complaint should be dismissed in its entirety.  For the reasons that follow, defendants' Motion to Dismiss is granted.

## II.  FACTUAL BACKGROUND[1]

Craig is an African-American female who has been employed by DMHAS as a Mental Health Assistant II for over sixteen years.  2nd Am. Compl. at ¶ 3.  As a union delegate, Craig frequently represents her coworkers and herself in disputes between the union and management.  Id. at ¶ 5.

In October 2012, Craig received a five-day suspension on the grounds that she failed to supervise a client and then falsified documents about her client's whereabouts. Id. at ¶ 9, Ex. 2.  Craig filed a complaint of discrimination with the State of Connecticut Commission on Human Rights and Opportunities ("CHRO") in November 2012.  Id.  The notice of Craig's five-day suspension should have been removed from her file after eighteen months, but remains there as of October 2016.  Id. at ¶ 10.  Defendants have used the notice of the five-day suspension as a pretext to place Craig on multiple 90-day Performance Improvement Plans ("PIP"), which limit her promotional opportunities and expose her to termination.[2]  Id. at ¶ 11.

On September 24, 2015, a DMHAS Safety Officer sent an office-wide email informing DMHAS employees that several staff members had the air released from their cars' tires in a DMHAS parking lot.  Id. at ¶ 13, Ex. 4.  The email stated that an investigation was ongoing and did not name any suspects.  Id.  Subsequently, several

---

[1] All "facts" are taken from the Second Amended Complaint unless otherwise stated.

[2] Craig attaches her Annual Service Ratings, Employee Service Ratings, and PIP as exhibits in support of her allegation that defendants used the five-day suspension as a pretext to place her on the PIPs.  2nd Am. Compl. at ¶ 11.  The ratings detail many aspects of Craig's performance, but there is no mention of the 2012 suspension on any of the forms.  Id. at Exs. 20–23.

of the defendants questioned Craig about the incident and gave her a brochure titled, "Violence in the Workplace." Craig was the only employee questioned and counseled on workplace violence at the meeting. Id. at ¶ 13–14.

At an unspecified time, defendant Debby Baker referred to Craig as "an angry Black Woman [sic], who often wore dread locks styled hair." Id. at ¶¶ 16, 112. Baker also described Craig as "cocky, lacking respect, intimidating, exhibiting poor communication skills, being illogical, and rude"; said that Craig's hair style "harbored head lice"; and stated that Craig "was too cocky and needed to be cut down to size." Id. at ¶¶ 17–18, 113–14. In addition, in Craig's performance evaluations, defendants wrote that Craig was "working too slowly on the job." Id. at ¶¶ 22, 27, 118. DMHAS never disciplined any of the individual defendants for making derogatory remarks towards Craig. Id. at ¶¶ 17, 113.

Following defendants' conduct described above, Craig developed serious mental and emotional conditions, including anxiety, depression, post-traumatic stress disorder, high blood pressure, and insomnia. Id. at ¶ 23. Craig was granted a leave of absence under the Federal Family and Medical Leave Act ("FMLA") in January 2016. Id. at Ex. 9. Craig later applied for an accommodation for her mental health conditions, which she supported with documentation of her diagnosis of a nervous breakdown in 2016. Id. at ¶¶ 24, 29. In her accommodation request, Craig asked to be moved from the second shift to the third shift. Id. at Ex. 9. On November 18, 2016, the ADA Review Committee denied her request. Id. Craig states that the defendants determined that Craig's mental and emotional "conditions were not serious enough, and that she needed to develop a

more concrete [version] of a nervous breakdown in order to qualify for an accommodation under the ADA."[3] Id. at ¶ 30.

In June 2016, Craig attempted to a file a grievance about receiving discipline without cause. Id. at ¶¶ 38–39. The defendants told Craig that "only managers could file complaints." Id.

## III. LEGAL STANDARDS

### A. Rule 12(b)(1)

"In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." Tandon v. Captain's Cove Marina of Bridgeport, Inc., 752 F.3d 239, 243 (2d Cir. 2014). Where jurisdictional facts are in dispute, the court has the power to decide issues of fact by reference to evidence outside the pleadings, such as affidavits. Id. The burden is on the plaintiffs to establish jurisdiction. Renne v. Geary, 501 U.S. 312, 316 (1991); see also Tandon, 752 F.3d at 243.

A motion to dismiss pursuant to Rule 12(b)(1) is "the proper procedural route" to bring a challenge to a plaintiff's Article III standing to adjudicate a claim. Alliance for Environmental Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 88 n.6 (2d Cir. 2006).

---

[3] Craig provides a copy of the letter from the DMHAS Affirmative Action Office denying her accommodation request as an exhibit to the Second Amended Complaint. 2nd Am. Compl., Ex. 9. The letter provided several reasons for denying Craig's request, but does not include the quoted language regarding the severity of Craig's condition. It is unclear when the defendants told Craig the language quoted in the Second Amended Complaint was the basis for their denial of her request.

B.    Rule 12(b)(2)

Upon a motion to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court may properly exercise jurisdiction over the defendants.  See Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A., 722 F.3d 81, 84–85 (2d Cir. 2013).  "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists."  Eades v. Kennedy, PC Law Offices, 799 F.3d 161, 167–68 (2d Cir. 2015) (internal quotation marks omitted).  "A plaintiff can make this showing through his own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant."  Whitaker v. American Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2008) (citations, internal quotation marks, brackets, and ellipsis omitted).  The court "construe[s] the pleadings and affidavits in the light most favorable to the plaintiffs, resolving all doubts in their favor."  Dorchester, 722 F.3d at 85.

C.    Rule 12(b)(5)

When a plaintiff fails to effect proper service upon a defendant and the defendant does not waive service of process pursuant to Rule 4(d), the plaintiff's action may be subject to dismissal pursuant to Rule 12(b)(5).  "On a Rule 12(b)(5) motion to dismiss, the plaintiff bears the burden of establishing that service was sufficient."  Khan v. Khan, 360 F. App'x 202, 203 (2d Cir. 2010).

D.    Rule 12(b)(6)

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must determine whether a plaintiff has stated a legally cognizable claim by making allegations that, if true, would show that the plaintiff is entitled to relief.  See Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 557 (2007) (interpreting Rule 12(b)(6), in accordance with Rule 8(a)(2), to require allegations with "enough heft to 'sho[w] that the pleader is entitled to relief'" (alteration in original)).  The court takes all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor.  Crawford v. Cuomo, 796 F.3d 252, 256 (2d Cir. 2015).  However, the principle that a court must accept a complaint's allegations as true is inapplicable to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

To survive a motion pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Twombly, 550 U.S. at 556).

## IV. DISCUSSION

A.  <u>Service of Process for the Individual Defendants in their Official Capacities</u>

Under Federal Rule of Civil Procedure 4, a plaintiff may serve process upon a government agency by "delivering a copy of the summons and of the complaint to its chief executive officer" or "serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant."  Taylor v. Norwalk Cmty. Coll., No. 3:13-cv-1889 (CSH), 2015 WL 5684033, at *5 (D. Conn. Sept. 28, 2015) (quoting Fed. R. Civ. P. 4(j)(2)).

Under Section 52-64 of the Connecticut General Statutes:

> Service of civil process in any civil action . . . against any officer, servant, agent or employee of the state . . . may be made by a proper officer (1) leaving a true and attested copy of the process, including the declaration or complaint, with the Attorney General at the office of the Attorney General in Hartford, or (2) sending a true and attested copy of the process, including the summons and complaint, by certified mail, return receipt requested, to the Attorney General at the office of the Attorney General in Harford.

Defendants argue that Craig never served the individual defendants in their official capacities. See Defs.' Mem. in Supp. of the Mot. to Dismiss ("Defs.' Mem.") (Doc. No. 49-1) at 9–13. Instead, DMHAS was the only defendant served at the Attorney General's Office. See id. at 11. Craig argues that all of the individual defendants received copies of the summons and complaint indicating that they were being sued in their individual and official capacities. See Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n") (Doc. No. 57) at 12–15. Further, the summons and complaint served on the Office of the Attorney General provided notice that the individual defendants were being sued in their official capacities. See id. at 14.[4]

Craig did not serve individual defendants in their official capacities under Rule 4(j)(2) or Connecticut law. None of the returns of service Craig has filed show that the individual defendants were served in their official capacities. See Doc. Nos. 17, 20, 27, 46. Presumably, the basis for Craig's argument that the individual defendants were on notice that they were being sued in their official capacities is that they were served a

---

[4] Craig spends a page addressing the distinction between a "proper officer" and an "indifferent person" in response to an argument Craig states the defendants put forward. See Pl.s' Opp'n at 13. However, the defendants did not discuss the type of person who can serve process. The only conceivable explanation for Craig's imagined dispute is that her attorney copied and pasted an argument from another case.

copy of the Complaint in their individual capacities.  If Craig is suggesting that the

caption of the Complaint, which states each defendant's name followed by "in her

individual and in her official capacities," accomplished service, then that is clearly

inadequate under Rule 4(j)(2) or Connecticut law.[5]  With the exception of the summons

naming DMHAS that was delivered to the Attorney General's Office in Hartford in

compliance with section 52-64, <u>see</u> Doc. No. 20, the returns of service only evidence

the service of defendants in their individual capacities, <u>see</u> Doc Nos. 17, 27, 46.

Craig also argues that the copy of the complaint and summons served on the

Office of the Attorney General gave notice that the individual defendants were being

served in their official capacities.  The basis for Craig's argument is again uncertain, but

to the extent that she is referring to the list of every defendant in the case that appeared

on the cover page of the summons, she has plainly not complied with the federal or

state rules for service.  No summons for <u>any</u> of the individual defendants were delivered

to the Attorney General's Office.  <u>See</u> Conn Gen. Stat. § 52-64 (describing the method

for serving process "against any . . . employee of the state").  The requirements of Rule

4(j)(2) and Connecticut law have not been satisfied as to the individual defendants in

their official capacities because there has been no service on each of the defendants in

accordance with section 52-64.

When the plaintiff shows "good cause" for failing to serve the defendants, "the

court must extend the time for service for an appropriate period."  Fed. R. Civ. P. 4(m).

---

[5] The caption of the Second Amended Complaint only lists the individual defendants in their individual capacities even though it includes claims against the individual defendants in their official capacities.  The captions in Plaintiff's Opposition to the Motion to Dismiss, the Amended Complaint, and the Complaint all list the individual defendants in their individual and official capacities.  The court will assume that the change in the Second Amended Complaint was inadvertent.

Even without good cause, district courts have discretion to grant extensions of time to serve process. See Zapata v. City of New York, 502 F.3d 192, 196 (2d Cir. 2007). The defendants repeatedly alerted plaintiff's counsel to the fact that he had not served the individual defendants in their official capacities. Defendants' counsel stated that she was appearing for the individual defendants in their individual capacities only, see Doc Nos. 11, 18, 48, and later stated that the defense contested personal jurisdiction over the individual defendants in their official capacities, see Report of Rule 26(f) Planning Meeting (Doc. No. 35). Given the ample opportunity she had to cure the deficiency in her service of process, Craig has not shown good cause for her failure to properly effect service on the individual defendants in their official capacities. See George v. Prof'l Disposables Int'l, Inc., 221 F. Supp. 3d 428, 433 (S.D.N.Y. 2016) (A "delay in service resulting from the mere inadvertence, neglect, or mistake of a litigant's attorney does not constitute good cause." (quoting AIG Managed Mkt. Neutral Fund v. Askin Capital Mgmt., L.P., 197 F.R.D. 104, 108 (S.D.N.Y. 2000)). The court need not determine whether it would nonetheless exercise its discretion to grant Craig an extension of time to serve process because her claims against the individual defendants in their official capacities all fail on the grounds of the Eleventh Amendment.

B. John Doe and Jane Doe Defendants

Apart from listing John Does and Jane Does in the caption of the Second Amended Complaint, Craig does not make allegations against the unnamed defendants anywhere in the Complaint. See Fed. R. Civ. Pro. 12(b)(6). In addition, Federal Rule of Civil Procedure 4(m) requires that defendants be served with process within ninety days

after a complaint is filed.  Fed. R. Civ. Pro. 4(m).  No John Doe or Jane Doe has been served.

Craig argues that the claims against the unnamed defendants should not be dismissed because discovery has not yet begun.  Craig filed her initial Complaint on December 21, 2016.  She filed her Opposition to Defendant's Motion to Dismiss stating that she had not begun discovery on September 12, 2017.  The deadline for discovery is January 15, 2018.  Craig cannot show "good cause" for extending the time for service beyond ninety days when, 265 days after filing her Complaint, she had not yet begun discovery.

The claims against the Doe defendants are dismissed under Rule 12(b)(6) for failure to state a claim upon which relief may be granted and Rule 4(m) for failure to provide service of process.

### C.     Sections 1981 and 1983 (Count I)[6]

#### 1.     11th Amendment

In response to defendants' argument that Craig's sections 1981, 1983, 1985, and 1986 claims are barred by the Eleventh Amendment, <u>see</u> Defs.' Mem. at 16–18, Craig has withdrawn her claims for monetary damages under those sections against DMHAS and the individual defendants in their official capacities, <u>see</u> Pl.'s Opp'n at 16.  Craig maintains her claims for injunctive relief.

Craig does not make an argument for why her claims for injunctive relief in Counts One and Five are not barred by the Eleventh Amendment.  <u>See</u> Pl.'s Opp'n at

---

[6] Craig includes sections 1985 and 1986 in the heading for Count I in the Second Amended Complaint, but she does not plead violations of sections 1985 and 1986 in that count.  The court will thus address her allegations under sections 1985 and 1986 in Count V, where she includes her allegations under those sections.

16. Defendants argue that Craig's requests for injunctive relief are too vague to satisfy the requirements of the Ex parte Young doctrine, which allows claims for "prospective injunctive relief" against individual state officers. See Defs.' Reply to Pl.'s Opp'n to Mot. to Dismiss ("Defs.' Reply") (Doc. No. 61) at 8 (citing In re Deposit Ins. Agency, 482 F.3d 612, 618 (2d Cir. 2007)).

The Ex parte Young doctrine requires that plaintiff's complaint "'(a) alleges an ongoing violation of federal law' and (b) 'seeks relief properly characterized as prospective.'" In re Deposit Ins. Agency, 482 F.3d at 618 (quoting Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002)). Because the Ex parte Young doctrine does not apply to suits against the state itself, Craig's claim for injunctive relief against DHMAS cannot proceed. See Va. Office for Prot. & Advocacy v. Stewart, 563 U.S. 247, 255 (2011). Moreover, assuming that Craig served process on the individual defendants in their official capacities, her request for injunctive relief—"an order that each defendant shall fully comply with the provisions of [sic] pursuant to 42 U.S.C. § 1981 . . . "—is impermissibly vague and overbroad. See Peregrine Myanmar Ltd. V. Segal, 89 F.3d 41, 51 (2d Cir. 1996) ("[U[nder Rule 65(d), an injunction must be more specific than a simple command that the defendant obey the law."). Thus, her claim for injunctive relief under sections 1981, 1983, 1985, and 1986 is dismissed.

2. Section 1981

Section 1981 provides that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981. The analysis of employment discrimination claims under Title VII

applies to comparable claims under sections 1981 and 1983. See Patterson v. County of Oneida, 375 F.3d 206, 225 (2d Cir. 2004). "When the defendant is a state actor, Section 1983 is the exclusive remedy for violations of rights guaranteed under Section 1981." See Bermudez v. City of New York, 783 F. Supp. 2d 560, 576 (S.D.N.Y. 2011); see also Gladwin v. Pozzi, 403 F. App'x 603, 605 (2d Cir. 2010) (explaining that plaintiff's section 1981 claims are "encompassed" by her section 1983 claims and are therefore analyzed under Section 1983); Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 733 (1989) (holding that section 1983 is the exclusive remedy for violations of rights guaranteed under section 1981 when the defendant is a state actor). The term "state actor" as used in Jett included both state entities and individuals acting under color of state law. See Burbank v. Office of Atty. Gen. of Connecticut, 250 F. Supp.2d 167, 174 (D. Conn. 2003). Accordingly, Craig's claims under section 1981 against DHMAS and the individual defendants in their official and individual capacities are dismissed.

3.     Section 1983

To state a claim under section 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States . . . committed by a person acting under color of state law." See Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 87–88 (2d Cir. 2015) (quoting Feingold v. New York, 366 F.3d 138, 159 (2d Cir. 2004)). Defendants do not contest that the conduct Craig alleges violated her rights was under color of state law because it was "committed by state employees acting in their official capacities as [DHMAS] employees and exercising their responsibilities pursuant to state law." See Feingold, 366 F.3d at 159. However, defendants contend

that Craig has not identified violations of any constitutional rights. See Defs.' Mem. at 30.

### 4.    First Amendment Retaliation

"To state a First Amendment retaliation claim, a plaintiff must establish that: (1) his speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech." Puglisi v. Town of Hempstead, Dep't of Sanitation, Sanitary Dist. No. 2, 545 F. App'x 23, 26 (2d Cir. 2013) (quoting Cox v. Warwick Valley Cent. Sch. Dist., 654 F.3d 267, 272 (2d Cir. 2011)). "[T]he First Amendment protects a public employee from retaliation by his or her employer for the employee's speech only if 'the employee sp[eaks] [1] as a citizen [2] on a matter of public concern.'" Singer v. Ferro, 711 F.3d 334, 339 (2d Cir. 2013) (alteration in original) (quoting Garcetti v. Ceballos, 547 U.S. 410, 418 (2006)).

Defendants argue that Craig has not identified any constitutionally protected speech in which she engaged, or in which she was prevented from engaging. See Defs.' Mem. at 31. Defendants also argue that Craig did not experience any retaliation for engaging in protected speech. Id. Defendants assert that the only speech Craig has identified—a complaint she made in 2012 to the CHRO and an attempt to file a grievance in 2016—cannot form the basis of a First Amendment claim. Id. The 2012 complaint is barred by Connecticut's three-year statute of limitations, see Harnage v. Torres, 665 F. App'x 82, 83 (2d Cir. 2016) and, in 2016, Craig's supervisor merely conveyed to Craig the DHMAS policy that only supervisors could complete the form Craig filed, but informed Craig she could present her supervisor with a complaint at any

time, see 2nd Am. Compl., Ex. 16. In Craig's Opposition to Defendants' Motion to Dismiss, she restates the facts of her case in a background section, but she does not respond to the defendants' argument that she has not stated a plausible claim for First Amendment retaliation. See Pl.'s Opp'n at 1–7.

In the section of her Second Amended Complaint labeled "The Parties," Craig alleges that defendants have retaliated against her as a result of her union activity. See 2nd Am. Compl. at ¶¶ 5–6.[7] Although the references to Craig's union activity at the beginning of the Second Amended Complaint would seem to suggest that Craig's union activity lies at the heart of her claims, Craig subsequently makes no mention of her union activity in any of the Counts, including the section of Count One where she presents her First Amendment retaliation claim. See id. at ¶ 131. Instead, in subsections purportedly supporting her First Amendment claim, Craig asserts that she has been subject to disparate treatment "on the basis of his [sic] race, color, age, harassment and by subjecting the Plaintiff to a racially hostile work place . . . ." See id. at ¶ 131(a).[8] In oral argument on November 20, 2017, Craig represented that the

_____

[7] Rather than pleading facts in her Second Amended Complaint, Craig makes conclusory statements followed by references to exhibits. While exhibits may supplement facts plead in a complaint, the plaintiff cannot refer the court to exhibits as a substitute for following Rule 8's requirement to state claims with sufficient clarity that the defense, and the court, have notice of what is being plead and can assess the merits of the complaint. Here, for example, Craig alleges in vague terms that she was active in the union and, instead of pleading facts, refers the court to 52 pages of "assorted emails." The sections of her Second Amended Complaint on each of her five counts are entirely devoid of factual content—besides incorporating all of the preceding paragraphs of the complaint—and consist of nothing more than long chains of generalized allegations.

[8] In the section of the Second Amended Complaint titled "Parties," Craig introduces various facts as grounds for claims of retaliation, racially hostile work environment, harassment, and discrimination. See 2nd Am. Compl. at ¶¶ 7, 8, 9, 12, 19, 28. It is not clear which facts are alleged in support of any given claim. The sections on each individual count include pages and pages of recitations of the elements of various causes of action without including any allegations specific to Craig's claims. Moreover, the paragraphs under section 1983 blend various causes of actions, resulting in a claim that is difficult to decipher. See id. at ¶ 131, 131(a) (listing disparate treatment on the "basis of his [sic] race, color, age, harassment" and racially hostile workplace as the basis of a "First Amendment to Free Speech" claim.)

alleged protected activity she engaged in was filing personal complaints and grievances against the defendants. When asked how union activity figured into her First Amendment retaliation claim, Craig's counsel stated that she was referring to union hearings for her own complaints.

Personal grievances are not speech on a matter of public concern that can form the basis of a First Amendment retaliation claim. See Ruotolo v. City of New York, 514 F.3d 184, 190 (2d Cir. 2008). "[S]peech on a purely private matter, such as an employee's dissatisfaction with the conditions of his employment, does not pertain to a matter of public concern." Sousa v. Roque, 578 F.3d 164, 174 (2d Cir. 2009) (quoting Lewis v. Cohen, 165 F.3d 154, 164 (2d Cir. 1999)). This is in part because "government officers could not function if every employment decision became a constitutional matter." See Connick v. Myers, 461 U.S. 138, 143 (1983). Craig's attempt to file a personal grievance in 2016, and her complaint in 2012 to the CHRO, are not instances of protected First Amendment speech, even assuming the latter was not time-barred. Craig does not state a claim under the First Amendment.

5. Due Process

"In order to prevail on a due process claim, a claimant must identify a constitutionally protected property or liberty interest and demonstrate that the government has deprived that party of the interest without due process of law." Weinstein v. Albright, 261 F.3d 127, 134 (2d Cir. 2001). Property interests are created by independent sources such as state law. See Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972). "Under Connecticut law, only 'classified' employees 'have a property right in continued employment which is protected by the due process clause of the

[F]ourteenth [A]mendment." <u>Torres-Hicks v. Conn. Housing Finance Authority</u>, 575 F. Supp. 2d 393, 404 (quoting <u>King v. Lensink</u>, 720 F. Supp. 236, 239 n.1 (D. Conn. 1989). Craig does not assert that she was terminated from her employment and thus she cannot assert a violation of due process.

6.    Equal Protection Clause: Discrimination

In Count One of the Second Amended Complaint, Craig claims that defendants violated her rights under the Equal Protection Clause and that she experienced disparate treatment and retaliation.[9]  Presumably because Craig did not clearly state what her claims are or the factual bases for them, the defendants did not respond to her disparate treatment claim specifically.

"The Fourteenth Amendment provides public employees with the right to be 'free from discrimination.'" <u>Vega v. Hempstead Union Free Sch. Dist.</u>, 801 F.3d 72, 87 (2d Cir. 2015) (quoting <u>Demoret v. Zegarelli</u>, 451 F.3d 140, 149 (2d Cir. 2006)).  With the addition of the requirement that the person who allegedly violated plaintiff's rights have acted under color of state law, a section 1983 discrimination claim is analyzed under the same framework as a Title VII discrimination claim.  <u>See</u> <u>id.</u> at 88.  "[T]o defeat a motion to dismiss in a Title VII discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." <u>Id.</u> at 87.  A plaintiff can allege that her employer took adverse action against her at least in part for a

---

[9] As with her First Amendment retaliation claim, Craig does not clearly state what constitutional violation she seeks to vindicate under section 1983 and how that right was violated.  It is not clear if Craig is alleging that she was retaliated against for her union activity, discriminated against on the basis of her race, or retaliated against for complaining of racial discrimination.

discriminatory reason "by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." Id.

Craig alleges that defendants took adverse employment actions against her in the form of keeping her on a PIP and failing to remove her five-day suspension from her file.[10] "A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." Galabaya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (internal quotation marks omitted). "An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003) (internal quotation marks omitted). "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Id. (alteration omitted) (internal quotation marks omitted).

Craig alleges that defendants have kept the notice of her five-day suspension from 2012 in her file as a pretext to place her on PIPs. 2nd Am. Compl. at ¶ 11. Craig alleges that her placement on PIPs has in turn prevented her from pursuing promotional opportunities. Id. The Second Circuit has held that a performance improvement plan is not an adverse employment action insofar as it requires an employee to follow certain

_____

[10] Craig does not allege facts in connection with any of her specific legal claims. Instead, she alleges acts of "retaliation" in the "Parties" section of her Second Amended Complaint. It is not clear whether these acts of retaliation are also claimed to be discrimination on the basis of race. Although Craig only characterizes the PIP as an act of retaliation, the court presumes that Craig intends the PIP to form a part of her discrimination claim as well because, without an adverse employment action, her discrimination claim would be incomplete.

requirements.  See Brown v. Am. Golf Corp., 99 F. App'x 341, 343 (2d Cir. 2004).

However, when a performance improvement plan affects an employee's possibility for

advancement or compensation, it may be an adverse employment action.  See

E.E.O.C. v. Bloomberg L.P., 967 F. Supp. 2d 816, 893 (S.D.N.Y. 2013) (finding that

plaintiff's placement on a performance plan could constitute an adverse employment

action when it impacted her eligibility to receive additional compensation).

Here, Craig argues that the tangible effect of the PIPs is to prevent her from

being promoted.  In order to state a claim for a failure to promote, a plaintiff must show

that "she applied for an available position for which she was qualified, but was rejected

under circumstances which give rise to an inference of unlawful discrimination."  See

Brown v. Coach Stores, Inc., 163 F.3d 706, 710 (2d Cir. 1998) (quoting Texas Dep't of

Community Affairs v. Burdine, 450 U.S. 248, 253 (1981)).  It is not sufficient to allege

that a plaintiff generally requested promotion consideration.  See Petrosino v. Bell

Atlantic, 385 F.3d 210, 227 (2d Cir. 2004).  Instead, there must be a specific position to

which a plaintiff applied.  Id.  Craig has not alleged any facts about a specific

promotional opportunity for which she applied.

While the Second Amendment Complaint only pleads the PIPs' effect on her

ability to attain a promotion, the court notes, after digging deeper into materials

appended to the complaint than any court should have to, that Craig has provided

emails in which she complains of limitations upon her ability to transfer positions.[11]  In

one email, Craig expresses her desire for a lateral transfer because there are "no

avenues for personal growth or advancement."  2nd Am. Compl. Ex. 1 at 27.  In another

---

[11] Craig attached 237 pages of exhibits to a 44 page Second Amended Complaint.

email, a DMHAS employee informs Craig that she is not permitted to add her name to the transfer list because, per DMHAS policy, an employee with discipline more serious than a written warning and a Service Rating that is not satisfactory or better is ineligible to transfer. Id. at 20. However, there is no indication in the documents Craig provided that the PIPs or the five-day suspension notice from 2012 limited Craig's ability to transfer. Without an accompanying negative consequence, the PIPs and the continued presence of the 2012 discipline notice in her file cannot qualify as adverse employment actions. See Bloomberg L.P., 967 F. Supp. 2d at 893. Craig's discrimination claim is dismissed for failure to state a claim.

However, the court notes that Craig has alleged that defendant Debby Baker made discriminatory comments about her. Baker allegedly made references to Craig as "an angry Black woman, who often wore dread locks styled hair." See 2nd Am. Compl. at ¶ 112. Someone also allegedly overheard Baker telling a coworker that Craig's dreadlocks hair style "harbored head lice." See id. at ¶ 113. If Craig is able to allege that these comments reveal discriminatory intent in connection with an adverse employment action, she may state a claim for discrimination. At the motion to dismiss stage, the plaintiff "need only plausibly allege facts that provide 'at least minimal support for the proposition that the employer was motivated by discriminatory intent.'" Id. at 87 (quoting Littlejohn v. City of New York 795 F.3d 297, 311 (2d Cir. 2015).

Because it appears that Craig may be able state a claim against defendant Debby Baker, the court grants Craig leave to file an amended complaint in seven (7) days against Baker, or any specific defendant, who allegedly discriminated against her.

If Craig chooses to file an amended complaint, she must allege facts on the face of her complaint.  See Fed. R. Civ. P. 8(a)(2).

7.     Equal Protection Clause: Retaliation

Craig repeatedly makes reference to retaliation without specifying whether she is referring to First Amendment retaliation or retaliation by a supervisor against an employer for complaining of or otherwise opposing discrimination in violation of the Equal Protection Clause.  In order for an Equal Protection Clause retaliation claim under section 1983 to survive a motion to dismiss, "the plaintiff must plausibly allege that: (1) defendants acted under the color of state law, (2) defendants took adverse employment action against him, (3) because he complained of or otherwise opposed discrimination." Vega, 801 F.3d at 91.  As with discrimination claims brought under section 1983, retaliation claims under section 1983 mirror the analysis for Title VII cases.  Id.  For the purposes of a Title VII retaliation claim, "an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'"  See id. at 90 (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006).  Indirect evidence such as proximity in time between the protected activity and the adverse employment action can be sufficient to plead causation.  See id. at 90.

The only protected activity Craig alleges is a complaint to the CHRO in 2012. This complaint is too remote in time from Craig's placement on the PIP beginning in 2014 to plausibly allege a causal link between a protected activity and an adverse employment action.  Craig's retaliation claim under the Equal Protection Clause is therefore dismissed for failure to state a claim.

8.    Equal Protection Clause: Hostile Work Environment

In order to state a cause of action for a hostile work environment claim, Craig must allege that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." <u>Demoret v. Zegarelli</u>, 451 F.3d 140, 149 (2d Cir. 2006) (internal quotation marks omitted). A "[p]laintiff must show not only that she subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive." <u>Id.</u> "Generally, unless an incident of harassment is sufficiently severe, 'incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" <u>Id.</u> (quoting <u>Alfano v. Costello</u>, 294 F.3d 365, 374 (2d Cir. 2002)). A section 1983 equal protection claim must allege the personal involvement of the individual defendants. <u>See</u> <u>Feingold v. New York</u>, 366 F.3d 138, 159 (2d Cir. 2004).

Craig has not plead facts that plausibly allege a claim to a hostile work environment. The comments Craig attributes to Debby Baker are concerning and have supported the court's decision to grant Craig leave to replead her discrimination claim, <u>see</u> <u>supra</u> at 20, but Craig does not describe her interactions with Baker beyond the two remarks about her race and hair. Stray remarks cannot constitute the basis for a hostile work environment claim. <u>See</u> <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993) ("[M]ere utterance of an epithet which engenders offensive feelings in a [sic] employee does not sufficiently affect the conditions of employment to implicate Title VII." (internal quotation citation, quotation marks, and editing omitted)); <u>Payton v. City Univ. of New York</u>, 453 F. Supp. 2d 775, 785 (S.D.N.Y. 2006) ("Conduct that is merely offensive,

unprofessional, or childish cannot support a hostile work environment claim.  Nor can offhand comments, isolated incidents, stray remarks, or [the plaintiff's] subjective belief constitute a viable claim.") (internal citation and quotation marks omitted)).

Furthermore, the Second Amended Complaint indicates that Craig heard of the remarks second-hand.  While racial remarks need not be spoken in the presence of the plaintiff to contribute to a hostile work environment, <u>Schwapp v. Town of Avon</u>, 118 F.3d 106, 111 (2d Cir. 1997), the two insults at issue, both spoken out of earshot of Craig, do not amount to a hostile work environment.  <u>See</u> <u>Bennette v. Cinemark U.S.A., Inc.</u>, 295, F. Supp. 2d 243, 251 – 52 (considering that remarks were heard second-hand in evaluating the totality of the circumstances in a hostile work environment claim).   Craig does not make any allegations about defendants' conduct beyond Baker's remarks and the conclusory statement that Craig has been "subjected to repeated acts of harassing conduct, retaliation, and a hostile work environment.  <u>See</u> 2nd Am. Compl. at ¶ 12. Craig's hostile work environment claim is therefore dismissed.

D.    <u>Negligent Infliction of Emotional Distress (Count II)</u>

Defendants argue that the 11th Amendment bars Craig's suit against DMHAS and the individual defendants in their official capacities.  Craig does not respond to this argument.  Craig has not presented any arguments that the state defendants have consented to be sued on an NIED claim nor that any statute has abrogated their immunity.   The court finds that the NIED claim against DMHAS and the individual defendants in their official capacities is barred by state sovereign immunity.

The Supreme Court of Connecticut has found that an individual municipal employee can only be found liable for negligent infliction of emotional distress in the

context of the termination of employment, as opposed to actions occurring in the context of an ongoing employment relationship.  See Bakhit v. Safety Markings, Inc., 33 F. Supp. 3d 99, 105 (D. Conn. 2014) (citing Perodeau v. City of Hartford, 259 Conn. 729, 763 (2002)).  Craig does not allege that she was fired and therefore has not stated a claim for NIED against the defendants in their individual capacities.  See id.

E.      Defamation (Count III)

As with Craig's NIED claim, the court finds that the defamation claim against DMHAS and the individual defendants in their official capacities is barred by the Eleventh Amendment.

Under Connecticut law, "[a] defamatory statement is defined as a communication that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."  Gambardella v. Apple Health Care, Inc., 291 Conn. 620, 627 (2009).  "To establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement."  Id. at 627–28.  A statement must be false to be actionable as defamation.  See Cweklinsky v. Mobil Chemical Co., 267 Conn. 210, 228–29 (2004).

Craig alleges that the defendants accused her of "releasing the air from the tires of two of her coworkers."  Craig alleges that defendants then counseled her and presented her with a manual on workplace violence.  However, nowhere in her Second Amended Complaint does Craig allege that any defamatory statement was made about

her.  The email that was sent out alerting DHMAS employees to the investigation into the tire deflating did not identify Craig or any particular individual.  The defendants' presentation of a manual on workplace violence is not a defamatory statement.  This leaves the "counseling."  Defendant alleges that "[t]his incident was witnesses [sic] by other [sic] at Defendants DMHAS [sic]."  Without any factual allegations of what was said, that third parties heard the statement, or that there was harm to her reputation, Craig has not alleged facts that plausibly state a claim for relief.  Her defamation claim is dismissed.

F.    The Americans with Disabilities Act (Count IV)

Having failed to exhaust her administrative remedies, Craig withdrew her ADA claim at oral argument on November 20, 2017.[12]

G.    Sections 1985 and 1986 (Count V)

"To state a claim under § 1985, a plaintiff must allege: (1) a conspiracy, (2) an intent or purpose to deprive a person of equal protection of the law; (3) an act in furtherance of the conspiracy; and (4) an injury to a person, including injury to property, person, or constitutional right."  Bhatia v. Yale Sch. of Med., 347 F. App'x 663, 665 (2d Cir. 2009).  To plead a conspiracy, a plaintiff must "provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end."  Arar v. Ashcroft, 585 F.3d 559, 569 (2d

---

[12] Because Craig withdrew her ADA claim, the court does not reach the question of whether her ADA claim against DHMAS and the individual defendants in their official capacities is barred by the Eleventh Amendment.  However, the court is troubled that Craig argues that she has brought her employment discrimination claim not under Title I of the ADA, but pursuant to Title II, which, unlike Title I, has been found to abrogate state sovereign immunity.  See Pl.'s Opp'n at 24–26.  Craig's position flies in the face of Second Circuit law that is directly to the contrary.  See Mary Jo C. v. New York State & Local Ret. Sys., 707 F.3d 144, 171 (2d Cir. 2013) ("[W]e conclude that the [ADA] unambiguously limits employment discrimination claims to Title I.  A public employee may not bring a Title II claim against his or her employer, at least when the defendant employer employs fifteen or more employees.")

Cir. 2009) (quoting <u>Webb v. Goord</u>, 340 F.3d 105, 110 (2d Cir. 2003). Craig has not plead any facts to support her conspiracy claim beyond her conclusory statement that there was a conspiracy. <u>See</u> 2nd Am. Compl. at ¶ 184 – 86. Section 1986 provides a cause of action against a defendant that failed to prevent an underlying section 1985 conspiracy. Consequently, her section 1986 claim must fail along with her section 1985 claim. <u>See</u> <u>Maack v. Wyckoff Heights Medical Center</u>, 2017 WL 4011395 at *8 (S.D.N.Y. Sept. 11, 2017). Both claims are therefore dismissed.

## V. CONCLUSION

For the foregoing reasons, the defendants' Motion to Dismiss is granted. Count One is dismissed, with permission to replead the discrimination claim within seven (7) days of this Ruling. Counts Two, Three, and Five are dismissed. Count Four has been withdrawn.

**SO ORDERED.**

Dated at New Haven, Connecticut this 28th day of November, 2017.

 /s/ Janet C. Hall
Janet C. Hall
United States District Judge