UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LOIS CRAIG, | : | |
|     Plaintiff, | : | CIVIL CASE NO. |
| | : | 3:16-CV-2100 (JCH) |
| v. | : | |
| | : | |
| DEBBY BAKER, | : | FEBRUARY 2, 2018 |
|     Defendant. | : | |
| | : | |

**RULING RE: MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT (DOC. NO. 78)**

**I. INTRODUCTION**

Plaintiff Lois Craig ("Craig") brings this action against Debby Baker in her individual capacity under section 1983 of the United States Code for allegedly discriminating against her in violation of the Equal Protection Clause of the Fourteenth Amendment. Craig's Third Amended Complaint includes a single count against the "defendants"[1] under both section 1981 and 1983 of the United States Code. See 3d Am. Compl.[2] Baker moves to dismiss the Third Amended Complaint. Mot. to Dismiss (Doc. No. 78). For the reasons that follow, Baker's Motion to Dismiss is granted.

---

[1] In her Third Amended Complaint, Craig brings her discrimination claim against both Debby Baker and Rose Perisco. See 3d Am. Compl. (Doc. No. 76) at ¶¶ 32, 42. That is the first time that Rose Perisco appears in this case. Under Federal Rule of Civil Procedure 15(a), "[a] party may amend its pleading once as a matter of course within . . . 21 days after serving it . . . [i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a). Craig did not seek the defendant's consent nor the court's leave to amend the Second Amended Complaint to add a new defendant nearly a year after she filed her initial Complaint. In addition to never having been named, Perisco has not been served.

In her Motion to Dismiss Plaintiff's Third Amended Complaint (Doc. No. 78) ("Mot. to Dismiss"), Baker noted the deficiency in Craig's pleading. See Mot. to Dismiss at 10–11. In response, Craig has withdrawn her claim against Perisco, see Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n") (Doc. No. 88) at 7.

1

## II. FACTUAL BACKGROUND

Craig is an African-American female who has been employed by DMHAS as a Mental Health Assistant II ("MHA II") for over sixteen years. See 3d Am. Compl. at ¶ 3.[3] As a union delegate, Craig frequently represents her coworkers and herself in disputes between the union and management. See id. at ¶ 5. In 2012, the defendants[4] hired Melanie Lagana as an MHA I and promoted her after a year. See id. at ¶ 11. The defendants promoted Lagana even though the MHA union contract requires an employee to be in the MHA I position for three years before he or she is eligible for promotion to the MHA II position. See id. at ¶ 12. In November 2013, the defendants hired Heidi Bishop, a white female, to the position of Recovery Support Specialist. See id. at ¶ 13. The Recover Support Specialist position was changed to MHA II in 2014. See id. at ¶ 14.

---

[2] Plaintiff's counsel's inclusion in the headnote for Count One of DMHAS, multiple defendants in their individual and official capacities, and causes of action other than for discrimination is in flagrant disregard of the court's Ruling re Motion to Dismiss ("Ruling") (Doc. No. 72), which dismissed without right to replead all of Craig's claims except for her discrimination claim "against Baker, or any specific defendant, who allegedly discriminated against her." Ruling at 19. Thus, DMHAS and all individual defendants except for Baker are no longer in the case.

Plaintiff's counsel appears to have copied and pasted Count One of the Third Amended Complaint, which includes claims on the basis of 1981 of title 42 of the United States Code, the First Amendment, hostile work environment, retaliation, and disability, from Craig's prior complaints.

[3] In the following paragraph, Craig asserts that Craig is an MHA I. See 3d Am. Compl. at ¶ 4. In response to the conflicting job titles in the Third Amended Complaint, Baker attaches Craig's response to an interrogatory regarding her employment history, which states that she has been an MHA II since 2007. See Reply to Plaintiff's Opposition to Motion to Dismiss ("Reply"), Ex. A at 2 (Doc. No. 91-1).

[4] The Third Amended Complaint brings claims against Baker and Perisco and therefore refers to "defendants" in the plural. Because the court is not able to parse which allegations Craig makes against which "defendant," the court will refer to "defendants" consistent with the Third Amended Complaint even though, following Craig's withdrawal of her claim against Perisco in her Opposition, see Pl.'s Opp'n at 7, Baker is the only remaining defendant.

In August 2015, Craig applied for a vacant, full-time MHA II position, but she was not granted an interview, while "non-basis"[5] persons with less work experience and less seniority were interviewed. See id. at ¶ 15. In October 2015, defendants hired someone who was less qualified and younger than Craig for the MHA II position. See id. at ¶ 16. Craig was placed on a Performance Improvement Plan ("PIP") in October 2015, which prevented her from applying for other MHA II positions. See id. at ¶ 16. In February 2016, Craig applied for a third shift position, which the defendants gave to a less qualified, more junior, "non basis" person. See id. at ¶ 9.

In 2014, the defendants said that Craig's hair style "harbored head lice," but neither one was disciplined by DMHAS. See id. at ¶¶ 45, 52.[6] In 2015, Craig was cited repeatedly for "neglect/refusal to perform her delegated duties, that she has been threatening, as disruptive to the work environment." See id. at ¶ 49. In 2016, defendants referred to Craig as "an angry black woman, who often wore dread locks." Id. at ¶¶ 44, 50. In August 2016, the defendants described Craig as "cocky, lacking respect, intimidating, exhibiting poor communication skills, being illogical, and rude. See id. at ¶ 51. At unspecified times, defendants said that Craig was "too cocky and needed to be cut down to size" and that she was "working too slowly on the job." See id. at ¶¶ 56, 59.

---

[5] Craig refers to "non-basis" persons through her Third Amended Complaint and did not clarify the meaning of the term in her Opposition to the Motion to Dismiss even after Baker indicated that she did not understand what the term means. See Def. Baker's Mem. in Supp. of her Mot. to Dismiss ("Def.'s Mem.") (Doc. No. 78-1) at 16.

[6] In its Ruling, the court dismissed Craig's claims against DMHAS and the individual defendants in their official capacities with prejudice. See Ruling at 10–11. Nevertheless, Craig refers to DMHAS as a defendant. See supra note 2. The court will read these allegations against "defendants" as against Baker.

Following defendants' conduct described above, Craig developed serious mental and emotional conditions, including anxiety, depression, post-traumatic stress disorder, high blood pressure, and insomnia. Id. at ¶ 60.

## III. PROCEDURAL BACKGROUND

Craig filed her original Complaint on December 21, 2016. (Doc. No. 1). On January 27, 2017, Craig filed her First Amended Complaint, which included 272 pages of exhibits. (Doc. No. 16). On February 23, 2017, the defendants filed a Motion for More Definite Statement. (Doc. No. 23). Craig objected to defendants' Motion on March 17, 2013, and represented that she would withdraw Count Two (Intentional Infliction of Emotional Distress) and Count Five (Monell) as to all defendants. (Doc. No. 26). On April 27, 2017, the court denied the defendants' Motion, but ordered Craig to file a second amended complaint that removed Counts Two and Five and supplied additional information about Baker. (Doc. No. 36).

Craig's Second Amended Complaint, which she filed on July 10, 2017, included five counts against DMHAS and seven DMHAS employees in their individual and official capacities. (Doc. No. 45). On November 28, 2017, the court granted the defendants' Motion to Dismiss Plaintiff's Second Amended Complaint in its entirety. (Doc. No. 72). The court dismissed the Second Amended Complaint with prejudice with the limited exception that Craig was permitted to file an amended complaint against Baker or any individual defendant who allegedly discriminated against her. See id. at 25.[7]

---

[7] The preceding summary only includes the procedural background that is relevant to understanding the parameters of the Third Amended Complaint. It omits plaintiff's counsel's repeated disregard for the court system, his opponent, and, most importantly, his client. Plaintiff's counsel did not file a bond as security until nearly a month after the court's order required; did not file the Second Amended Complaint until two months after the court's deadline; has not filed any joint status reports with the court; failed to attend a hearing on September 27, 2017 without alerting the court or opposing

4

## IV. LEGAL STANDARD

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must determine whether a plaintiff has stated a legally cognizable claim by making allegations that, if true, would show that the plaintiff is entitled to relief. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007) (interpreting Rule 12(b)(6), in accordance with Rule 8(a)(2), to require allegations with "enough heft to 'sho[w] that the pleader is entitled to relief" (alteration in original)). The court takes all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. Crawford v. Cuomo, 796 F.3d 252, 256 (2d Cir. 2015). However, the principle that a court must accept a complaint's allegations as true is inapplicable to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

To survive a motion pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not

---

counsel; did not respond to the court's first Order to Show Cause why he did not appear at the hearing; and has repeatedly not responded to defendant's discovery requests.

In addition, in a brazen violation of Rule 8's requirement to provide "a short and plain statement of the claim," see Fed. R. Civ. P. 8(a), in the First and Second Amended Complaints, plaintiff's counsel submitted 44 pages of conclusory statements followed by vague references to 272 pages of exhibits. In the briefs he has filed throughout this litigation, most egregiously in his most recent Opposition to Baker's Motion to Dismiss ("Pl.'s Opp'n") (Doc. No. 88), Craig's counsel has copied and pasted 12 pages—presumably from briefs in other cases—that recite legal standards and mention parties that are completely irrelevant to the instant case.

5

akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556).

**V. DISCUSSION**

    A.    <u>Discrimination</u>

Baker argues that Craig fails to state a claim for relief for discrimination on the basis of race because she has not plausibly alleged that an adverse employment action was taken against her, see Def.'s Mem. at 15–17, that her race was a motiving factor in the employment decision, see id. at 17–19, or that Baker was personally involved in the alleged constitutional violation, see id. at 19–20. Craig does not respond to Baker's argument that she has failed to state a claim of racial discrimination. See Pl.'s Opp'n.[8]

"The Fourteenth Amendment provides public employees with the right to be 'free from discrimination.'" Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 87 (2d Cir. 2015) (quoting Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006)). With the addition of the requirement that the person who allegedly violated plaintiff's rights have acted under color of state law, a section 1983 discrimination claim is analyzed under the same framework as a Title VII discrimination claim. See id. at 88. "[T]o defeat a motion to dismiss in a Title VII discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or

---

[8] The 13 pages of legal analysis in Craig's brief appear to have been almost entirely copied and pasted from briefs from other cases that are irrelevant to the remaining claim being asserted and are devoid of any application to the facts of this case. See Pl.'s Opp'n at 7–19. After a brief section describing the standard of review under Rule 12(b)(6) and a paragraph withdrawing the claim against Rose Perisco, Craig devotes eight pages to reciting the legal standards for analyzing legislation under intermediate scrutiny and assessing whether government actions violate substantive due process or the Due Process Clause. See id. at 7–14. Within the five pages of legal analysis related to her claim—section 1983 employment discrimination and qualified immunity—only one paragraph contains facts specific to Craig's case, albeit without any application of the case law discussed in the preceding 12 pages. See Pl's Opp'n at 18–19.

national origin was a motivating factor in the employment decision." Id. at 87. A plaintiff can allege that her employer took adverse action against her at least in part for a discriminatory reason "by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." Id.

"A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." Galabaya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (internal quotation marks omitted). "An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003) (internal quotation marks omitted). "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Id. (alteration omitted) (internal quotation marks omitted).

Craig appears to allege that her placement on a Performance Improvement Plan ("PIP"), which allegedly limited her promotional opportunities, and the denial of her applications for other positions, constitute adverse employment actions. See Pl.'s Opp'n at 3; 3d Am. Compl. at ¶¶ 7–17.[9] First, Craig alleges that she applied for MHA II positions in August and September of 2015, but that the "defendants" gave the positions

---

[9] Craig does not use the term "adverse employment action" in her brief. However, because Craig's only claim is one for employment discrimination, the court will analyze her claim in accordance with the Second Circuit case law, which requires a plaintiff to allege an adverse employment action in order to state a claim for employment discrimination. See Vega, 801 F.3d at 87 (stating the elements of section 1983 and Title VII employment discrimination claims).

to other applicants.[10]  See 3d Am. Compl. at ¶¶ 8, 15.  Second, Craig alleges that the "defendants" subsequently placed Craig on a PIP, which has prevented Craig from applying for MHA II positions.  See id. at ¶ 16.[11]  Third, Craig alleges that she applied for a third shift position in February 2016.  See id. at ¶ 9.  Craig does not assert any allegations as to what a third shift position is or how it differs from the position she occupied at the time she applied.  However, elsewhere in the Third Amended Complaint, Craig alleges that her placement on the PIP has prevented her from applying for other MHA II positions or promotions.  See id. at ¶¶ 7, 16.  Thus, a third shift position must not be an MHA II position or an advancement from an MHA II position.

Because Craig was already an MHA II at the time she allegedly applied for other MHA II positions, and she does not allege that a third shift position is an advancement above an MHA II, Craig has not stated a claim for discrimination on a failure to promote theory.  See Brown v. Coach Stores, Inc., 163 F.3d 706, 710 (2d Cir. 1998).  However, the denial of a request for lateral transfer is an adverse employment action if "the sought for position is materially more advantageous than the employee's current position, whether because of prestige, modernity, training opportunity, job security, or some other

---

[10] Except for the reference to "Defendant DMHAS" in Count One, the Third Amended Complaint only alleges claims against Baker and Perisco. After withdrawing her claim against Perisco in her brief, it would seem that Craig is only asserting a claim against Baker and that all references to a defendant would relate to Baker.  However, in her Opposition to the Motion to Dismiss, Craig continues to refer to DMHAS, Manmeit, Cremin-Endes, Davis, Cramer, and Harris.  For example, Craig asserts that "Defendants Endes, Manmeit, Davis, Harris, and Cramer have used Defendant Bakers five-day 95) suspension to lock the Plaintiff into their Performance Improvement Plan."  See Pl.'s Opp'n at 3.  Because Craig refers to "defendants," it is impossible to discern what specific actions Craig alleges Baker is responsible for.

[11] Given that Craig is already an MHA II, see id. at ¶ 3; Reply, Ex. A at 2 (Doc. No. 91-1), this allegation is inconsistent with Craig's argument in her brief that the PIP had the effect of "denying her promotional opportunities, see Pl's Opp'n at 3.

8

objective indicator of desirability." Beyer v. Cty. of Nassau, 524 F.3d 160, 165 (2d Cir. 2008). Thus, the denial must have "created a materially significant disadvantage in [the plaintiff's] working conditions." Williams v. R.H. Donnelley Corp., 368 F.3d 123, 128 (2d Cir. 2004).

Craig does not allege any facts regarding the other MHA II or the third shift positions to which she applied. See 3d Am. Compl. at ¶¶ 8, 9, 15, 16. Craig therefore has not plausibly alleged that the denial of her request for a lateral transfer was an adverse employment action.

Craig also alleges that the PIP prevented her from applying to other positions. See id. at ¶ 7. The Second Circuit has held that a performance improvement plan is not an adverse employment action insofar as it requires an employee to follow certain requirements. See Brown v. Am. Golf Corp., 99 F. App'x 341, 343 (2d Cir. 2004). However, when a performance improvement plan affects an employee's possibility for advancement or compensation, it may constitute an adverse employment action. See E.E.O.C. v. Bloomberg L.P., 967 F. Supp. 2d 816, 893 (S.D.N.Y. 2013) (finding that plaintiff's placement on a performance plan could constitute an adverse employment action when it impacted her eligibility to receive additional compensation).

Craig has not alleged any facts about how her placement on the PIP affected her possibility for advancement or compensation. Craig alleged only that her placement on the PIP prevented her from applying "for any subsequent vacant MHA II positions that became available." 3d Am. Compl. at ¶ 16. However, as discussed above with relation to the denial of a lateral transfer, Craig has not plausibly alleged that her inability to apply for other MHA II positions was an adverse employment action. Although Craig

9

asserts that the PIP denied her "possibilities for advancement, and increased compensation," 3d Am. Compl. at ¶ 7, she does not allege a single fact about how the other positions may have advanced her career or provided additional compensation. While a court must accept a complaint's factual allegations as true, that principle is inapplicable to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). Because Craig has not plausibly alleged that she experienced any adverse employment action, she has failed to state a claim of discrimination under section 1983.

Even assuming that Craig had identified an adverse employment action, she has not plausibly alleged that her race was a motivating factor in such an action. Craig makes two allegations related to race, but neither is tied to any conceivable adverse employment action. First, Craig alleges that Baker made derogatory remarks toward her. See 3d Am. Compl. at ¶¶ 44–45. However, Craig does not allege facts that, taken as true, would connect Baker and any racial animus she harbored to an employment decision. See Vega, 801 F.3d at 87. Craig asserts throughout her Third Amended Complaint that "the defendants" made discriminatory hiring decisions, but, as discussed above, it is not clear whether "defendants" refers to DMHAS generally, Baker, Perisco, or any of the five other individuals who Craig refers to as defendants but are no longer part of this case. Craig alleges that Baker "is the immediate supervisor to the Plaintiff and she is chiefly responsible for the unlawful conduct complained of by the Plaintiff" and that Baker "had the authority to hire, and fire," see id. at ¶¶ 33–34, but the court

cannot impute any given hiring decision at DMHAS to Baker merely because she "has the authority to hire and fire" Craig for her current position.

Second, Craig alleges that in November 2013 the defendants hired Heidi Bishop, "a white female," to the position of Recovery Support Specialist, which was then changed to MHA II. See 3d Am. Compl. at ¶¶ 13–14. However, Craig does not allege that she applied to the MHA II position for which Bishop was hired. It is not clear what relevance Bishop has to Craig's case. As for the positions to which Craig did apply, Craig alleges that "non-basis" individuals were hired instead of her. See id. at ¶¶ 8, 9, 15. Craig does not explain what "non-basis" means even after the defendant puzzled over the meaning of the term in her Memorandum in Support of her Motion to Dismiss. See Def.'s Mem. at 16. The contrast between Craig's description of Bishop as white and the applicants chosen for the MHA II and third shift positions instead of Craig as "non-basis" indicates that the term "non-basis" is unrelated to race. Thus, Craig has not alleged facts regarding the race of the individuals selected for the positions to which she applied in support of her claim of racial discrimination.

Ultimately, the only mention of a candidate of a different race is for a position to which Craig did not apply. Even if there had been an adverse employment action taken against Craig, the court concludes that Craig has not plausibly alleged that race was a motivating factor in any such decision.

Finally, even had Craig stated a claim for employment discrimination under the framework used in Title VII cases, she has not plausibly alleged that Baker was personally involved in any action taken against her. See Feingold v. New York, 366 F.3d 138, 159 (2d Cir. 2004) ("A finding of 'personal involvement of [the individual]

defendants' in an alleged constitutional deprivation is a prerequisite to an award of damages under Section 1983.") (quoting Provost v. City of Newburgh, 262 F.3d 146, 154 (2d Cir. 2001)). The only actions that Craig plausibly alleges Baker was involved in were the derogatory remarks to Craig, which, standing alone, do not rise to the level of a constitutional violation. See Ruling at 21–22.

The court concludes that Craig has failed to state a claim for discrimination under section 1983. Her Third Amended Complaint is therefore dismissed.

**VI. CONCLUSION**

For the foregoing reasons, Baker's Motion to Dismiss (Doc. No. 78) is granted.[12]

**SO ORDERED.**

Dated at New Haven, Connecticut this 2nd day of February, 2018.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge

---

[12] The Clerk is directed to close the case. Thus, the defendant's Second Motion to Compel (Doc. No. 93) and Motion to Dismiss for Failure to Comply With a Court Order (Doc. No. 94) will be terminated undecided. However, if for any reason this case is reopened, those Motions must be reopened, and will be decided by the court.